IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                             **No. CR 16-3870 JCH**

**JOSEPH CORDOVA,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Joseph Cordova's Motion to Suppress evidence discovered in his vehicle pursuant to what Defendant contends was an illegal search and seizure. **[Doc. 12]** An evidentiary hearing was held on January 31, 2017. After reviewing the motions, briefs, evidence, and relevant law, the Court concludes that there was no violation of Defendant's Fourth Amendment rights warranting suppression of the evidence, and therefore, the motion shall be denied.

## FINDINGS OF FACT

The facts giving rise to Defendant's motion took place on June 5, 2016 in Taos County, New Mexico. Around 2:00 p.m., Taos Central Dispatch sent out a radio advisory about a silver Mitsubishi Lancer that reportedly had been swerving in and out of the roadway, indicating that the driver was intoxicated. **[Doc 12, p. 1-2; Doc. 19, p. 2]** The vehicle had been last seen at a Shell gas station in Taos, NM. **[Id.]**

New Mexico State Police Officer Bennett responded to the call and headed toward the Shell station. Officer Bennett testified that he saw the silver Mitsubishi parked at the gas station,

but he did not immediately approach it, and instead parked across the street to observe the vehicle. **[1-31-17 Tr. 8:12-25]** He described seeing the driver of the Mitsubishi interact with the driver of a red and grey Ford Bronco for a short time before the Ford Bronco left the Shell station. **[1-31-17 Tr. 10:13-11:3]** The Mitsubishi remained in the Shell parking lot. Officer Bennett believed it was possible that the driver of the Mitsubishi had gotten in the Ford Bronco to escape being arrested for DUI, so he instructed Officer Snyder to follow the Bronco to investigate whether the passenger in the Bronco was intoxicated. **[1-31-17 Tr. 11:4-8; 14:4-18]** Officer Bennett then went to the Shell station to see if he could locate the driver of the Mitsubishi Lancer, and eventually made contact with the driver, Elijah Martinez, who was not intoxicated. **[1-31-17 Tr. 14:24-15:5; 19:15-25]** Officer Bennett discovered that Elijah Martinez's driver's license was expired, but because he had not consumed any alcohol, Officer Bennett allowed him to drive away. **[Doc. 21-3 p.2]**

Meanwhile Officer Snyder located the Bronco heading southbound away from the Shell station and followed it, noting that there were two occupants in the vehicle. **[1-31-17 Tr. 11:5-112:4]** Officer Oviedo, who had heard Officer Bennett call for assistance over the radio, also headed in the direction of the Bronco and joined Officer Snyder across the street from an O'Reilly's Auto Parts store about a half mile away from the Shell station. **[1-31-17 Tr. 36:2-6; 36:24-37:4112:2-12]** Officer Snyder told Officer Oviedo he had seen the two men in the Bronco enter the auto parts store, and Officer Oviedo suggested they approach the men to find out whether the passenger was intoxicated. **[1-31-17 Tr. 37:6-11]** As the officers entered the store, Officer Oviedo asked the people inside who owned the Ford Bronco, and Defendant responded that it was his. **[1-31-17 Tr. 37:14-19]** Officer Oviedo asked Defendant who was in the vehicle with him, and Defendant initially denied having a passenger. **[1-31-17 Tr. 41:6-8]** Officer

Oviedo explained that he was looking for an intoxicated driver who was believed to have abandoned his car at the gas station and asked Defendant for his identification. **[Ex. 5 1:35-2:10]** Officer Oviedo followed Defendant out of the store so he could retrieve his driver's license from his vehicle. **[1-31-17 Tr. 41:17-19]**

Officer Snyder, who had recognized Dennis Martinez inside the store, asked Defendant if Dennis was his passenger, and Defendant confirmed that he was. **[Ex. 5 2:49-3:04]** As Officer Snyder and Defendant talked, Officer Oviedo provided Defendant's driver's license information to the dispatch operator, who verified that Defendant had no outstanding warrants. **[Ex. 5 3:05-26; 3:41-51]** Having determined that Defendant's license was valid, Officer Oviedo returned his documentation and the officers shifted their focus to the task of determining whether the passenger, Dennis Martinez, was intoxicated. **[1-31-17 Tr. 42:1-2; 63:5-21]** The officers left Defendant in the parking lot, walked back inside the auto parts store, and Officer Snyder asked Martinez to come out and talk to them. **[1-31-17 Tr. 42:21-43:1; 115:13-15]** Martinez complied, and Officer Oviedo asked Martinez for his driver's license and provided his information to the dispatch operator to check for warrants. **[1-31-17 Tr. 42:21-43:1: 116:24-117:11]**

In response to the officers' questions, Martinez stated that he was not the driver of the Mitsubishi Lancer but that he had been riding in a different car before getting in the Bronco with Defendant. **[1-31-17 Tr. 116:10-23]** Defendant, who had not been involved in the conversation between the officers and Martinez, then told the officers he believed he left his phone inside the store and asked if he could go retrieve it by himself or if he needed to be accompanied by an officer. **[1-31-17 Tr. 118:13-15]** Both officers advised Defendant that he was not in trouble and that he could go back inside alone. **[1-31-17 Tr. 68: 5-17;118:13-21] [Exh. 5 6:10-7:00]** During this conversation, the dispatch operator informed the officers that Dennis Martinez had two

3

warrants out of Taos County so Officer Oviedo placed him under arrest. **[1-31-17 Tr. 43:2-11]** While conducting a search of Martinez incident to the arrest, Officer Oviedo found a small container containing Oxycodone and Oxycontin pills, for which Martinez stated he had a prescription. **[Doc. 12-4, p.1]**

Officer Snyder, meanwhile, had been talking to Defendant about his history of drug use and daily routine of visiting a methodone clinic. **[1-31-17 Tr. 121:2-122:22]** Defendant asked Officer Snyder about Martinez's bond, which Defendant indicated he intended to pay so that Martinez could get out of jail. **[1-31-17 Tr. 121:13-18]** Officer Snyder told Defendant that Martinez's bond would be $2000 cash-only and that Martinez would be transported to the Taos Hidalgo Detention Center. **[1-31-17 Tr. 121:19-22]** Officer Snyder also told Defendant that he was free to leave. **[1-31-17 Tr. 121:19-22]**

Around this time, Officer Bennett arrived at the auto parts store and after talking with Officer Oviedo, he approached Martinez who had been placed in Officer Oviedo's patrol car. **[1-31-17 Tr. 143:14-17]** Martinez told Officer Bennett that the prescription for his pills was in Defendant's vehicle. **[1-31-17 Tr. 144:2-3]** Officer Bennett moved Martinez to the back of his own patrol car, and asked Officer Snyder if he could get Martinez's prescription from Defendant's vehicle. **[1-31-17 Tr. 124:19-23]** Defendant walked back toward the officers, who asked him if they could get Martinez's prescription from the passenger seat of his vehicle, and he agreed. **[1-31-17 Tr. 124:24-125:25]** Defendant and Officer Snyder walked back across the parking lot toward the Bronco. **[1-31-17 Tr. 126:2-22]** Defendant opened the driver's side door and reached across the center console to grab the prescription bottles from the passenger's side. **[1-31-17 Tr. 126:2-8]** Officer Snyder, who was standing a few feet behind Defendant, noticed a small baggie containing a dark substance that looked like heroin in the door of the vehicle, took

possession of the baggie, and arrested Defendant for possession of a controlled substance. **[1-31-17 Tr. 127:8-9; 127:15-128:2]**

Officer Snyder searched Defendant incident to the arrest and found suboxen strips, which Defendant claimed were properly prescribed, along with a large bundle of cash and a baggie containing 15.3 grams of cocaine. **[1-31-17 Tr. 128:13-20]** The officers then conducted an inventory of the contents of Defendant's vehicle and found containers with large amounts of pills. **[1-31-17 Tr. 130:15-17]** Officers later obtained a search warrant for the vehicle and found heroin and digital scales. **[Doc. 12-1 p. 5]**

## DISCUSSION

Defendant now challenges the validity of the officers' conduct, arguing that although the initial stop at the O'Reilly's store was proper, the officers exceeded the scope of what was permissible under the circumstances underlying the initial stop by continuing contact once they determined Defendant and Martinez were not intoxicated. Accordingly, Defendant argues that all evidence found in his vehicle should be suppressed. **[Doc. 12]** The Government argues that the contact was a consensual encounter which does not implicate the Fourth Amendment. Alternatively, the Government contends that even the initial stop arose to the level of an investigative detention, Defendant was told that he was free to leave before officers found the evidence supporting his arrest, so the encounter became consensual and the evidence was lawfully obtained. **[Doc. 19, p. 1]**

The Supreme Court has explained that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386 (1991). "Whether a police-citizen encounter constitutes a seizure turns on a consideration of 'all the circumstances surrounding the encounter to determine whether the

5

police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'" *United States v. Lambert*, 46 F.3d 1064, 1067–68 (10th Cir. 1995) (quoting *Bostick*, 501 U.S. at 439, 111 S.Ct. at 2389). In a consensual encounter, the interaction is viewed as wholly voluntary. "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer. If the individual is free to leave at any time during the encounter, he or she is not seized under the Fourth Amendment." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). A consensual encounter does not necessarily have to be supported by any modicum of suspicion or cause. *Lambert*, 46 F.3d at 1067 ("Officers may approach an individual and ask questions randomly or on a hunch."). On the other hand, an investigative detention is a "Fourth Amendment seizure[] of limited scope and duration and must be supported by a reasonable suspicion of criminal activity." *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006). An investigative detention can become a consensual encounter if the police conduct changes such that the suspect no longer has a reasonable basis to believe he or she is not free to leave. *See Hernandez*, 93 F.3d at 1498.

The Tenth Circuit has considered several factors in determining whether an individual is seized, including:

> (1) the threatening presence of several officers; (2) the brandishing of a weapon by an officer; (3) physical touching by an officer; (4) aggressive language or tone of voice by an officer indicating compliance is compulsory; (5) prolonged retention of a person's personal effects; (6) a request to accompany the officer to the police station; (7) interaction in a small, enclosed, or non-public place; and (8) absence of other members of the public.

*United States v. Rogers*, 556 F.3d 1130, 1137-1138 (10th Cir. 2009). Also relevant is whether an officer informs the individual that he or she is free to go. *United States v. Fox*, 600 F.3d 1253, 1258 (10th Cir. 2010).

Based on the evidence before it, the Court is persuaded that the encounter leading up to the discovery of the evidence in Defendant's vehicle was consensual. After the initial interaction in which Officer Oviedo verified that Defendant was the owner of the Bronco and Officer Snyder confirmed that Martinez was Defendant's passenger, the totality of the circumstances indicate that Defendant was free to leave. Officer Oviedo promptly returned Defendant's driver's license after providing the information to the dispatch officer for a warrants check. Then, once the officers confirmed that Martinez was the passenger, they left Defendant alone in the parking lot while they went back into the store to get Martinez. The officers made no effort to physically restrain Defendant or restrict his movement during their conversation with Martinez. There is no evidence that they used any show of force or intimidation. In fact, when Defendant asked whether he needed to be accompanied by an officer to return to the store to retrieve his cell phone, he was clearly informed that he was not in trouble and could go unaccompanied and unsupervised. In essence, the officers communicated at this point that they were no longer investigating Defendant for any illegal conduct, thus signaling the encounter had ended and Defendant was free to leave. *See United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006) (explaining that officers may signal the end of an encounter without explicitly saying that an individual is free to leave and that any subsequent conversation would be consensual). Then, after Martinez had been placed under arrest, Defendant was explicitly told that he was free to leave. Rather than leave, however, Defendant reinitiated conversation with the officers, asking about Martinez's bond. Defendant's decision to remain at the auto store and continue talking to the officers was voluntary, and the encounter was consensual.

Further, because Defendant was not seized and was therefore not under the coercive pressures of an investigative detention or arrest, there is no evidence that his consent to retrieve

Martinez's prescriptions from his Bronco was not voluntarily given. Based on the fact that the officers allowed Defendant to reenter his vehicle and retrieve the prescriptions himself, it does not appear that the officers were exerting control over Defendant or had any intention of searching Defendant's vehicle themselves. Officer Snyder saw the baggie which he believed to contain heroin in plain view, from a lawful vantage point and it was therefore permissible for him to seize that evidence. *See generally Horton v. California*, 496 U.S. 128, 133-36 (1990) (discussing the plain view doctrine).

None of these facts suggest a violation of Defendant's constitutional rights, and even if it were true that he had been detained initially and that brief detention exceeded its lawful scope, his decision to remain and continue talking to the officers after he was clearly free to leave would attenuate any potential unlawful police conduct from the discovery of evidence. *See Utah v. Streiff*, 136 S.Ct. 2056, 2061 (explaining that under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that suppression would not serve to protect the interests guaranteed by the Fourth Amendment).

For these reasons, the Court is not persuaded that any of the evidence at issue here was unlawfully obtained. Accordingly, suppression of the evidence is not warranted.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress **[Doc. 12]** is hereby **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**